UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

J & J SPORTS PRODUCTIONS, INC.,

      Plaintiff,                              Case No. 13-13963

v.                                       Paul D. Borman
                                          United States District Judge

BADER MATTI,

      Defendant.
_____/

OPINION AND ORDER GRANTING PLAINTIFF'S CORRECTED MOTION FOR
DEFAULT JUDGMENT AND AWARDING DAMAGES (ECF NO. 16)

This action arises from Plaintiff J & J Sports Production, Inc.'s ("Plaintiff") allegation that Defendant Bader Matti violated federal law by illegally broadcasting a boxing match at his bar. Defendant Matti has failed to defend or otherwise appear in this action and Plaintiff now moves this Court for entry of a Default Judgment pursuant to Federal Rule of Civil Procedure 55(b)(2). (ECF No. 16).

Plaintiff previously moved for a default judgment against Defendant Matti on June 16, 2014. (ECF No. 14). The Court denied that motion without prejudice on August 5, 2014 because Plaintiff's motion for default was based on a different and separate transmission of a program that was not set forth in the complaint (but is the subject of a separate action between the same parties, *see J & J Sports Productions, Inc. v. Bader Matti*, case no. 14-12981). (ECF No. 15, Order).

Plaintiff now seeks a judgment against Defendant in the amount of $110,000.00, plus attorney's fees and court costs in the amount of $2,540.00, pursuant to 47 U.S.C. §§

605(e)(3)(C)(i)(I)-(II), 605(e)(3)(C)(ii) and 605(e)(3)(C)(iii).[1] A hearing on this matter was held on November 24, 2014 on this issue and for the reasons stated on the record and those set forth below, the Court GRANTS Plaintiff's motion for default and awards damages in the amount of $24,540.00.

## I. BACKGROUND

On September 16, 2013, Plaintiff filed its complaint against Defendant Matti and also against 150 West Café, LLC. (ECF No. 1, Compl. ¶¶ 6-8). Plaintiff alleges in its complaint that, pursuant to contract, it has the exclusive nationwide television distribution rights for the "*'Star Power' Floyd Mayweather, Jr. v. Victor Ortiz, Championship Fight Program*" and its undercard preliminary bouts (collectively "the Program") that were telecast nationwide on Saturday, September 17, 2011. (Compl. ¶ 10). Plaintiff asserts that Defendant Matti is the owner, officer, operator, or otherwise the person is charge of 150 West Café, LL. (*Id*. at ¶ 8; Mot. Ex. G, Report of LLC Members, Managers & Assignees). Plaintiff, in an attempt to combat piracy of its programs, hires investigative agencies who retain auditors who visit various commercial locations that have no record of paying the required fee. For a "commercial fee", a commercial establishment can receive an unscrambled signal enabling the business to view the program either through Plaintiff or an authorized distributor. The fee is determined by the number a "Rate Card" that ties the fee to the seating capacity of the business. (*See* Mot., Ex. I, Rate Card). Plaintiff claims Defendants illegally broadcast the Program to the patrons of 150 West Café on September 17, 2011 in violation of the Communication Act of 1934, as amended, 47 U.S.C. § 605, *et seq*., and the Cable & Televison Consumer Protection and Competition Act of 1992, as amended, 47 U.S.C. § 553, *et seq*. (*Id*. at ¶¶

---

[1] The Court notes that Plaintiff does not pursue its state law claim of conversion and therefore this Court will treat that claim as abandoned.

9-24; *see also* Mot. Ex. E, Taylor Aff.). Plaintiff also claims that the broadcast constituted conversion. (*Id*. at ¶¶ 24-27).

Plaintiff provides that Defendant Matti was served on November 3, 2013. (Mot. Ex. B). On January 22, 2014, after discovering 150 West Café, LLC was dissolved following a court-ordered receivership, Plaintiff voluntarily dismissed Defendant 150 West Café, LLC. (ECF No. 5). The same day, Plaintiff requested a entry of a Clerk's default against Defendant Matti which was entered on January 23, 2014. (ECF Nos. 7, 8).

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 55(b) a judgment by default may be entered against a defendant who has failed to plead or otherwise defend against an action. In order to obtain judgment by default, the proponent must first request the clerk's entry of default pursuant to Rule 55(a). *See Hanner v. City of Dearborn Heights*, No. 07-15251, 2008 WL 2744860, at *1 (E.D. Mich. July 14, 2008). Once a default has been entered by the clerk's office, all of a plaintiff's well-pleaded allegations, except those relating to damages, are deemed admitted. *Antoine v. Atlas Turner, Inc*., 66 F.3d 105, 110 (6th Cir. 1995)*, see also Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006) (citation omitted). Once a default is obtained, the party may then file for a default judgment by the clerk or by the court. FED. R. CIV. P. 55(b). If the plaintiff's well-pleaded allegations are sufficient to support a finding of liability as to the defendant on the asserted claims, then the Court should enter a judgment in favor of the plaintiff. *See Cross*, 441 F. Supp. 2d at 848. Although Rule 55(b)(2) does not provide a standard to determine when a party is entitled to a judgment by default, the case law sets forth that the court must exercise "sound judicial discretion" when determining whether to enter the judgment. Wright & Miller, 10A Federal Practice

& Procedure, § 2685 (3d ed. 1998) (collecting cases). After a court determines that a default judgment should be entered, it will determine the amount and character of the recovery awarded. *See id.* § 2688 (collecting cases).

### III. ANALYSIS

A.  Sufficient Service

"Because a party has no duty to plead until properly served, sufficient service of process is a prerequisite to entry of default. *Russell v. Tribley*, No. 10-14824, 2011 WL 4387589, at *8 (E.D. Mich. Aug. 10, 2011) (collecting cases). In the present action, Plaintiff has evidenced that Defendant Bader Matti was personally served on November 3, 2013 at 2953 Squire Ct., Troy, Michigan by providing a notarized proof of service. (Mot. Ex. B, Proof of Service with signature). This method of service comports with Federal Rule of Civil Procedure 4(e), which provides that an individual residing within a judicial district of the United States may be served by "delivering a copy of the summons and of the complaint to the individual personally". FED. R. CIV. P. 4(e)(2)(A). Therefore, Plaintiff has established that Defendant Matti was properly served in this action.

Accordingly, the Court should consider all of Plaintiff's well-pled allegations admitted. *See Cross*, 441 F. Supp. 2d at 846. Therefore, the Court's inquiry becomes whether Plaintiff's allegations are sufficient to support his claims and whether an award of damages is appropriate.

B.  Violations of 47 U.S.C. § 605 and § 553

Pursuant to 47 U.S.C. § 553(a)(1), "no person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator". Section 605(a), on the other hand, applies to satellite transmissions and provides in relevant part that a person who receives, transmits, or assists

4

in transmitting any communication by wire or radio may not divulge or publish that communication. *See Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 911 (6th Cir. 2001) (noting the Cable Communications Policy Act of 1984 was enacted to "address a problem which is increasingly plaguing the cable industry – the theft of cable service."); *see also Joe Hand Promotions, Inc. v. KSD, Inc.*, No. 3:13CV951, 2014 WL 4675264, *6-7 n.1 (N.D. Ohio, Sept. 18, 2014) (examining the legislative histories of both statutes and noting in a footnote that there is some struggle regarding the interplay between the two statutes). In this current action, where Plaintiff does not know how the Defendant pirated the signal (via satellite or through over a cable system) it is pro forma to plead both statutes, however, a Plaintiff cannot collect damages under both statutes. *See J & J Sports Productions, Inc. v. Trier*, 2009 U.S. Dist. LEXIS 6415 (E.D. Mich. Jan. 29, 2009); *Joe Hand Promotions, Inc. v. Granada Lounge, Inc.*, 11-13062, 2012 WL 447272, *2 (E.D. Mich. Feb. 13, 2012).

Plaintiff's complaint, motion for default, and attached exhibits establish that Defendant violated both § 605 and § 553 by intercepting and displaying the Program on Saturday, September 17, 2011 at his establishment, 150 West Café, LLC, located at 150 W. Jefferson Avenue, Detroit, Michigan ("the bar") for the purpose of direct or indirect commercial advantage and private financial gain. Specifically, Plaintiff provides that (1) Defendant did not pay to receive or publish the Program; (2) Defendant is the sole member, owner, person with control over the bar, 150 West Café, LLC; (3) the commercial rate charged to a business with seating of 101-200 was $4,200 (Mot. Ex. I, rate card); and (4) an auditor, Darin R. Taylor, hired by Plaintiff visited the bar on September 17, 2011 and observed through an unobstructed window that approximately 110 people were in the bar, which had four televisions displaying the Program, and that there was a ten dollar cover charge to

5

enter the bar to watch the Program. (Mot. Ex. E, Taylor Aff.).

Courts in this district and elsewhere have held that to state a claim against an individual under § 605 or §553, a plaintiff must allege facts establishing that the individual had a right and ability to supervise the infringing activities and that the individual had a direct financial interest in those same activities. *See Joe Hand Prod., Inc. v. Cain*, No. 06-12213, 2006 WL 2466266, at *2 (E.D. Mich., Aug. 24, 2006); *J & J Sports Productions, Inc. v. Stanley*, 2014 WL 2763635 (E.D. Mich. June 18, 2014) (granting motion for default judgment against individual defendants where the plaintiff had plead the individual defendant had supervisory control over the activities and received a financial benefit); *J & J Sports Prods., Inc. v. Walia*, 2011 WL 902245 *3 (N.D. Cal. Mar. 14, 2011) (collecting cases and observing "[i]ndeed, it appears that all courts addressing the issue have applied the copyright standard for individual liability to violations of § 553 and § 605."); *J & J Sports Prods., Inc. v. Ribeiro*, 562 F. Supp.2d 498, 501 (S.D.N.Y. 2008). Here, Plaintiff has alleged that Defendant was the sole member of the 150 West Café, LLC and also the "individual with dominion, control, oversight and management" of the 150 West Café, and that Defendant received a private financial gain in relation to the display of the Program. (Compl. ¶¶ 8, 14). Further, Plaintiff has provided evidence to corroborate that Defendant is indeed the sole member of 150 West Café, LLC. (Mot., Ex. G). Taking these well pled allegations as true, the Court should find that Plaintiff has established individual liability as to Defendant pursuant to § 605 and § 553.

As the Plaintiff correctly notes, when a defendant is liable under both § 553 and § 605, the plaintiff may only recover under one of those sections. *See Stanley*, 12-14093, 2014 WL 2763635, *2 (E.D. Mich. June 18, 2014) (citing *Trier*, 2009 U.S. Dist. LEXIS 6415 (E.D. Mich. Jan. 29, 2009)). In the present case, Plaintiff elects to recover under 47 U.S.C. § 605.

Pursuant to § 605, the "aggrieved party" may chose between actual or statutory damages. 47 U.S.C. § 605(e)(3)(C)(i). Plaintiff has requested statutory damages. (Mot. at 9). As set forth in the statute, Plaintiff can recover statutory damages for each violation in the sum of not less than $1,000 or more than $10,000 as determined by the Court. 47 U.S.C. § 605(e)(3)(C)(i)(II). However, where the court finds that the violation was committed "willfully and for the purposes of direct or indirect commercial advantage or private financial gain" the court can increase the award by the amount of $100,000 per violation. 47 U.S.C. § 605(e)(3)(C)(ii).

Plaintiff asserts that the violation at issue in this case was a wilful violation based on the fact that the Program was exhibited in a commercial establishment and that according to a second affidavit by the same auditor, a second unauthorized program was shown at the 150 West Café on a different date, the "Mayweather vs. Cotto" fight or one of its undercard preliminary bouts on May, 5, 2012. (Mot. Ex. J).[2]

"The damages awarded by the Court 'should take into account the proportionality between the loss suffered by the plaintiff and the profit gained by the defendant.'" *Granada Lounge, Inc*., 11-13062, 2012 WL 447272, *2 (quoting *Ribeiro*, 562 F. Supp. 2d at 501). Courts in this district have looked to certain relevant facts to determine a damage award including the number of patrons at the time of the violation, the seating capacity of the establishment, the rate charged by the plaintiff for the broadcast, whether the defendant charged a cover to patrons or "was likely to have obtained significant profits in another manner." *Id*. (quoting *Trier*, No. 08-11159, 2009 U.S. Dist. LEXIS 6415, at *3). In *Trier*, the court explained that

---

[2] This second alleged infraction is currently a separate action pending before this Court, *see J & J Productions, Inc. v. Matti*, case no. 14-12981).

> When the exact number of patrons is unknown, courts will award a flat sum based on considerations of justice. When the exact number of patrons is known, the court will based the award on the number of patrons in the establishment who viewed the unauthorized showing multiplied by a number set by the court. This number varies widely from $20 to $300, although most courts set a number around $50.

*Id.*, No. 08-11159, 2009 U.S. Dist. LEXIS 6415, at *3 (quoting *Ribeiro*, 562 F. Supp. 2d at 501-02) (internal citation and quotation marks removed)).

In this case, Plaintiff submitted evidence that there were approximately 110 patrons at the bar and a $10 cover was being charged to view the Program. Plaintiff's commercial rate based on the number of people in the bar at the time of the fight was $4200 pursuant to its rate card. (Mot., Ex. I). The Plaintiff does not provide what residential rate would have charged for the fight, although it is logical to assume it would be much less than the commercial rate.

In the present case, the number of patrons in bar is known - 110. Therefore, the Court will follow the direction of other courts in this district who have found *Trier* and *Ribeiro* instructive, and award damages based on the "head count" and then multiplying by dollar amount somewhere between $20 and $300. *See Ribeiro*, 562 F. Supp. 2d at 501-02 (ultimately multiplying the number of patrons by the pay-per-view residential rate of $54.95 and then doubling that amount to $1,500 to meet the statutory minimum, and then multiplying that amount by three because the violation was wilful); *see also Granada Lounge*, 2012 WL 447272, at *2-3 (finding that the commercial rate defendant would have been charged (rounded up to the statutory minimum) was appropriate while the higher base award of $10,000 was not justified because a cover was not charged and there were only 68 to 79 people in attendance, but then multiplying the $1,000 base award by three for wilfulness.); *Trier*, 2009 U.S. Dist. LEXIS 6415 at *3 (finding that where there were only 21 people at the establishment, where no cover was charged, and the commercial rate would have been $1600,

8

the court found that $1600 was an appropriate base award and multiplied by three based on the wilfulness of the violation.).  Here, there were a little more than 100 people in attendance and Defendant was collecting a cover charge.  Further, Defendant also displayed at least one other unauthorized program.  Therefore, the Defendant in this case is distinguishable from the defendants in *Ribeiro*, *Trier*, or *Granada Lounge*, none of whom charged their patrons a cover charge and none of whom have one other instance of displaying an unauthorized Program.  Therefore, the Court will award a flat $50 fee per patron in attendance, for a total of $5,500, as an appropriate base award.

Plaintiff's allegations and evidence also establish that the violation was wilful and therefore, the Court will also multiply the base award by four (4) in light of the fact that a cover was charged and because Defendant later broadcast a similarly unauthorized program in May 2012.  *See* 47 U.S.C. § 605(e)(3)(C)(ii).  This results in a total statutory award of $22,000.00.

Pursuant to 47 U.S.C. § 605(e)(3)(B)(iii), the court "shall direct the recovery of full costs, including awarding reasonably attorneys' fees to an aggrieved party who prevails."  In the present case, Plaintiff has submitted an affidavit requesting a total of $2,540.00 in fees and costs. (Mot. Ex. K, Invoice).  Plaintiffs' counsel requests a billable rate of $200.00 per hour for a total of 10.4 billable hours and $460 in costs ($400 filing fee and $60 service process fee).  Plaintiff has submitted the economics of law practice in Michigan Report to support its contention that a $200.00 billable rate is reasonable. (Mot., Ex. K).  The Court concludes that $200 is a reasonable billing rate, as the median billable rate for an attorney in private practice in Michigan in 2010 was $215, and finds that the request of attorney fees and costs in the amount of $2,540.00 is reasonable. (Ex. K at *7).  Therefore, the Court will award Plaintiff a total award, including attorney fees and costs, of $24,540.00.

## IV. CONCLUSION

For these reasons and those stated on the record, the Court GRANTS Plaintiff's Corrected Motion for Default Judgment and AWARDS damages in the amount of $24,450.00. (ECF No. 16).

IT IS SO ORDERED.

                                                  s/Paul D. Borman
                                                  PAUL D. BORMAN
                                                  UNITED STATES DISTRICT JUDGE

Dated: January 12, 2015

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 12, 2015.

                                                  s/Deborah Tofil
                                                  Case Manager